# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1995

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Donald Edwin Webber, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: February 13, 2001

Filed: July 6, 2001

_____

Before LOKEN, HEANEY, and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Donald Edwin Webber of willfully dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). The jury also found Webber guilty of one count, but not guilty of four other counts, of violating 18 U.S.C. § 922(j), which makes it unlawful to receive, possess, conceal, store, barter, sell, or dispose of a stolen firearm, "knowing or having reasonable cause to believe" the firearm was stolen. The district court[1] sentenced Webber to two concurrent twenty-month prison terms and two

_____

[1]The HONORABLE CHARLES R. WOLLE, United States District Judge for the Southern District of Iowa, sitting by designation in the Northern District of Iowa.

years of supervised released. Webber appeals his conviction, arguing that the district court abused its discretion in refusing to order the government to play all the tapes of recorded conversations between Webber, an informant, and a government agent; that the evidence was insufficient to convict him of knowingly receiving a stolen firearm; and that the five counts charging him with receiving stolen firearms were multiplicitous. We affirm.

## I. The Surveillance Tapes Issue.

The government's investigation of Webber began in September 1996 when federal inmate Robert Clark told government agents that Webber was trafficking in firearms. Clark arranged for Webber to meet with Special Agent Jeff Ulrich, posing as a prospective firearms purchaser, at Webber's home in Waterloo, Iowa. Ulrich observed over a dozen firearms and purchased four. Webber did not have a license to deal in firearms. The sales to Ulrich were the basis for Webber's conviction for unlicensed dealing, the charge in Count 1 of the indictment. Investigators later determined that the four firearms had been reported stolen, and a subsequent warrant search of Webber's home yielded eighteen additional firearms, several of which had been reported stolen. Seven of these stolen firearms were the basis for Counts 2-5 of the indictment, the four counts on which Webber was acquitted.

All ten of Webber's conversations with Clark and Ulrich were tape recorded. At the start of trial, transcripts of the ten audio tapes were admitted into evidence by agreement of the parties. At a recess during the direct testimony of government witness Clark, the prosecutor stated her intent to play for the jury all of the first tape, a telephone conversation between Clark and Webber, and eventually to play a total of four tapes during the testimony of Clark and Ulrich. Counsel for Webber objected, arguing that "all of the tapes have to be played, and they all have to be played at the same time pursuant to [Federal Rule of Evidence] 106." When the attorneys advised that playing all ten tapes would take six hours of trial time, the court ruled:

Frankly, I am concerned that the jury will be completely turned off by listening to six hours of tape of conversations that are already transcribed. That's what I call a pure waste of time. I recognize that the parties want to have the jury hear voices, and I'll allow some voices to be heard. My present inclination is to allow each side not to exceed one hour of playing tapes, and you can select those parts to be played, and you may do it now or, if it's too difficult to determine, you may do it between now and tomorrow morning and play that hour. It seems to me that the waste of time provision in [Federal Rule of Evidence] 403 requires this court to take into account the probative value versus the, essentially, unfairness to the jury of listening for that length of time to material that's already typed up in transcript form and received in evidence.

When trial resumed, the court advised the jury that, to save trial time, the court would permit each side to play only one hour of tapes in the courtroom. However, the court advised that the transcripts and the tapes were admitted into evidence and the jurors would have all the tapes and a tape-player available during their deliberations.

The following day, counsel informed the court that it would take only three hours to play all ten tapes. The court modified its ruling to permit Webber to play any tapes the government did not play. Webber objected that Rule 106 -- the rule of completeness -- required that all the tapes be played at once. The court overruled that objection, noting that each tape was being played in its entirety and advising that Webber could play all the tapes at once as part of his case. Ultimately, the government played only two tapes. Webber then chose to play only four of the remaining tapes, complaining that the court's earlier comments to the jury "limited the importance of those tapes."

On appeal, Webber argues that he was denied a fair trial when the district court refused to require the government to play all ten tapes to the jury in the order in which they were recorded. The court's ruling was contrary to Rule 106, Webber contends,

because fairness required that all of the taped conversations be played contemporaneously to prevent the jury from being misled by hearing the conversations out of context. The ruling was prejudicial, he argues, because voice inflections on the tapes would have supported the defense theory that Webber was an elderly man who liked to tell exaggerated stories about his supposed criminal activity, and who was constantly pushed by the government agents to deal in firearms. We review this evidentiary ruling for abuse of discretion. United States v. Oseby, 148 F.3d 1016, 1025 (8th Cir. 1998).

We acknowledge that Rule 106 may in some cases require that all or portions of a series of recorded conversations be played to avoid misleading the jury. But the party urging admission of an excluded conversation must "specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted." United States v. Sweiss, 814 F.2d 1208, 1212 (7th Cir. 1987). In addition, the district court has broad discretion to conduct the trial in an orderly and efficient manner, and to choose among reasonable evidentiary alternatives to satisfy the rule of completeness reflected in Rule 106. See United States v. Abroms, 947 F.2d 1241, 1250 (5th Cir. 1991), cert. denied, 505 U.S. 1204 (1992).

After careful review of the trial record, we conclude the district court did not abuse its substantial discretion to control the manner in which the tapes were presented to the jury. Both the tapes and transcripts of the tapes were admitted into evidence. The district court initially limited the amount of playing time during trial, and it allowed the government to play individual tapes out of sequence during its case-in-chief. But the court advised the jurors that the tapes would be available for playing during their deliberations. The court also permitted the defense to play all the tapes in order during its case, or to urge the jury to do so during its deliberations. That gave the defense ample opportunity to use the tapes in presenting its theory that Webber was merely "puffing" and telling stories in dealing with Clark and Ulrich. In these circumstances,

it is apparent that Webber's decision not to play all the tapes for the jury during trial was a matter of defense strategy.

## II. Sufficiency of Count 6 Evidence.

Webber argues the evidence was insufficient to convict him of Count 6, which charged him with knowingly receiving, concealing, storing, bartering, and disposing of a stolen AR 15 A2 Sporter Colt Rifle in the fall of 1994. We review the evidence in the light most favorable to the jury's verdict. United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996). We will overturn the jury's finding of guilt only if "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Pena, 67 F.3d 153, 155 (8th Cir. 1995).

At trial, government witness Richard Green testified that his former business partner, Ron Fluhr, stole the AR 15 rifle from Green's roommate, Dean Hanson. Hanson testified that, when he learned of the theft, "I told Ron he had four hours to get it back." Green and Fluhr's girlfriend, Melody Collins, testified that they went to Webber's home to retrieve the rifle. When Webber demanded $200 or something of equal value, Green gave Webber an oil painting and a wildlife print in exchange for the rifle, which was then returned to Hanson. Fluhr did not testify, but Agent Ulrich testified that Webber admitted Fluhr had pawned a high-powered weapon to Webber or his son for $100. According to Webber, he returned the weapon to its owner once he discovered it was stolen. Collins, Green, and Ulrich all testified that Webber knew the firearm was stolen when he exchanged it for the oil painting and the wildlife print.

Webber argues that the government failed to prove he knew or had reason to believe the rifle was stolen when he acquired it, and that he returned it to the rightful owner when he learned it might be stolen. We agree there was no testimony that Webber knew the gun was stolen when he received it from Fluhr, and we agree the

evidence suggests that Webber believed Green and Collins would return the rifle to its owner. But Webber did not surrender the firearm to be returned to its owner. Instead, with reason to believe it was stolen, Webber demanded $200 and received artwork in exchange for the gun. Thus, the evidence was sufficient to convict Webber, in the words of the statute, of "barter[ing]" the firearm for an oil painting and a wildlife print "knowing or having reasonable cause to believe that the firearm . . . was stolen."

### III. Multiplicity of Counts 2-6.

Webber argues the district court erred in denying his motion to dismiss Counts 2-6 of the indictment as multiplicitous. A multiplicitous indictment is one that charges a single offense in multiple counts. See United States v. Christner, 66 F.3d 922, 927 (8th Cir. 1995). "As applied to firearm offenses, this doctrine is fact-intensive, involving issues such as whether the guns were acquired at the same time, stored in the same place, and seized by the government in the same search." United States v. Waller, 218 F.3d 856, 857 (8th Cir. 2000); see United States v. Steeves, 525 F.2d 33, 39 (8th Cir. 1975).

Here, Count 6 involved Webber's alleged receipt and disposal of a firearm in 1994, long before the sale to Agent Ulrich and the subsequent warrant search that provided the factual underpinnings of Counts 2-5. Accordingly, Webber's contention that Count 6 was multiplicitous with Counts 2-5 is without merit. Furthermore, Webber was acquitted of Counts 2-5. Therefore, even if those counts were multiplicitous (an issue we need not address), he was not subject to the risk of multiple punishments for a single offense, the principal danger that the multiplicity doctrine addresses. See United States v. Burns, 990 F.2d 1426, 1439 (4th Cir.), cert. denied, 500 U.S. 967 (1993); United States v. Swaim, 757 F.2d 1530, 1537 (5th Cir.), cert. denied, 474 U.S. 825 (1985). Webber argues that a large number of multiplicitous counts creates the risk of a prejudicial compromise verdict. Although in a rare case that risk might justify requiring the government to elect among or consolidate counts at trial, it does not

justify dismissing well-pleaded counts in an indictment.  See United States v. Ketchum, 320 F.2d 3, 8 (2d Cir.), cert. denied, 375 U.S. 805 (1963).

The judgment of the district court is affirmed.  The government's motion to supplement oral argument is denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.