# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3782

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Winston Gordon, | * | |
| | * | |
| Defendant - Appellant. | * | |

———————

Submitted: October 15, 2007
Filed: December 26, 2007

———————

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

———————

MURPHY, Circuit Judge.

A jury convicted Winston Gordon of conspiracy to distribute in excess of 100 kilograms of marijuana, and the district court[1] sentenced him to 292 months. Gordon appeals, challenging an evidentiary ruling, a jury instruction, the sufficiency of the evidence, and his sentence. We affirm.

Gordon came to the attention of the Phelps County Sheriff's Department as a result of its traffic stop on January 13, 2004 of a tractor trailer driven by Ira Helton.

———————

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

Helton consented to a search which led to the discovery of boxes which appeared to contain marijuana, and the truck was then taken to the sheriff's department in Rolla, Missouri. A thorough search uncovered twenty four boxes of marijuana interspersed among a shipment of seafood. Each of the boxes of marijuana weighed approximately fifty pounds, with a total weight of 1471 pounds or 667 kilograms. After finding the marijuana and contacting Drug Enforcement Administration (DEA) agents, Detective Mark Williams noticed there were several incoming calls from "Winston" on Helton's mobile phone. The next morning Helton agreed to cooperate with the authorities, and he explained that he had been hired by Winston Gordon in 2003 to drive loads of seafood and marijuana across the country.

Helton agreed to try to lure Gordon to Rolla, and he placed several recorded calls to Gordon and his wife, Roberta Allen. Helton told them that he had been arrested in Rolla after a prostitute claimed he had raped her but the authorities had not searched the truck. He urged them to retrieve the truck from Rolla as soon as possible. After the sheriff's department had moved the truck to a local tow lot, the operator of the lot notified Detective Williams that Roberta Allen had called and said that Emmett Emil Lee was on his way to pick up the truck. Lee flew from Chicago to St. Louis and took a taxi from there to Rolla, where he was arrested and admitted that Gordon had sent him to Missouri. At this point DEA agents took Helton and Lee, who is the uncle of Roberta Allen, into federal custody. A federal grand jury subsequently indicted Gordon, Allen, Lee, and Helton for conspiracy to distribute marijuana. (Lee was also charged with interstate travel in aid of the conspiracy.) Helton pled guilty, and based on information he provided after his indictment, a grand jury returned a superseding indictment against Gordon, Allen, and Lee, and arrest warrants were issued for Gordon and Allen. At trial Allen and Lee were acquitted, but Gordon was found guilty.

Helton testified at trial that his first contact with Gordon had been facilitated by "Donald," a trucker with whom he had previously worked in St. Louis. Donald told

Helton he had a new job as a driver transporting marijuana, and he arranged for Helton to meet Gordon. During that meeting Helton indicated that he was interested in driving for Gordon's business, Swing Easy Transportation Company. Gordon arranged to pay Helton approximately $550 per week and $1000 per shipment of marijuana. The two met the following month at a truck stop near East St. Louis, Illinois and then drove a truck loaded with seafood to California. They delivered the seafood and picked up a new load destined for the East Coast. On their way east they stopped at a truck stop in Phoenix, Arizona. There they unhitched the trailer and then drove the tractor to a residence where Gordon left Helton. Gordon was gone for an hour, and on his return Helton saw there were twelve boxes of marijuana inside the tractor. He and Gordon later loaded the fifty pound boxes into the trailer at a truck stop outside of Phoenix.

From Phoenix the pair headed to Chicago, where they met "Kojak" and "Earl" who unloaded a few boxes of marijuana at a multifamily residence, one unit of which was occupied by Lee. Gordon and Helton continued from Chicago to Hartford, Connecticut where the remainder of the marijuana was delivered to "Fox." The pair delivered the seafood to cities throughout the upper East Coast, then picked up a new load of seafood to be delivered to California. On the drive back to California, they stopped in Hartford where they picked up a bag of money from Fox which they left in Chicago.

Helton made approximately nine similar trips from California to the East Coast and back on behalf of Gordon. Eight of those trips involved picking up, transporting, and delivering anywhere from twelve to twenty four boxes of marijuana, from Arizona to places in the middle and east of the country; the proceeds were transported to Chicago. The approximate total weight of the marijuana Helton testified to having transported and distributed, with or at the direction of Gordon, was 6071 pounds or 2754 kilograms. He also testified that on these trips he had seen Gordon carrying a 9 mm pistol in his briefcase numerous times; such a pistol was seized from Gordon's

house after his arrest. Helton testified that he also made seafood and marijuana deliveries with his former coworker Donald, with Gordon's nephew Ismael Lamont Kilgore, and with Lee. On one trip he delivered boxes of marijuana to "King Dad" in Philadelphia instead of to Fox in Hartford.

Helton and Lee made their final circuit trip with the usual marijuana pickup in Arizona and dropoffs in Chicago and on the East Coast. On their way back to California Helton dropped Lee in Chicago and continued on by himself. He delivered the seafood in California and picked up a new load, then stopped in Tucson for twelve boxes of marijuana and in Phoenix for twelve more. While en route to Chicago, he was stopped in Phelps County, Missouri, and 667 kilograms of marijuana were seized from his trailer.

About two months earlier, Gordon had been stopped for speeding in Colorado by Geary County deputy Willie Wallenberg and taken into custody for driving on a suspended license. At trial Deputy Wallenberg testified that he found $10460 cash in Gordon's truck. A drug dog brought to the scene alerted inside the vehicle and to the money, and the money and vehicle were impounded. Gordon was later released with his money when no drugs were found on him or in the vehicle. Gordon's attorney tried to cross examine Deputy Wallenberg about statements he had made about the cash in an affidavit. The government objected that the question was outside the scope of its direct examination which had been limited to the facts of Gordon's arrest. The district court sustained the objection over Gordon's argument that his inquiry was permissible under Fed. R. Evid. 106 and the rule of completeness.

Gordon moved for judgment of acquittal at the close of the government's case and again at the conclusion of the evidence. The motions were denied, and the district court instructed the jury on the greater offense of conspiracy to distribute in excess of 1000 kilograms of marijuana, as well as two lesser included offenses of conspiracy to distribute in excess of 100 kilograms or to distribute any amount of marijuana. The

jury was unable to reach a unanimous decision on the greater charge against Gordon but found him guilty of conspiracy to distribute in excess of 100 kilograms, making it unnecessary for it to consider the other lesser included offense charge.

At sentencing the district court attributed 1000 to 3000 kilograms of marijuana to Gordon, resulting in a base offense level of 32 under U.S.S.G. § 2D1.1(c)(4). It then added two levels for possession of a firearm in connection with a drug offense, under U.S.S.G. § 2D1.1(b)(1), and four levels for being the organizer or leader of the drug conspiracy, under U.S.S.G. § 3B1.1(a). Gordon's adjusted total offense level of 38 combined with his criminal category III resulted in an advisory guideline sentencing range of 292 to 365 months. The statutory range of punishment for conspiracy to distribute 100 kilograms or more of marijuana is five to forty years or 60 to 480 months. 21 U.S.C. § 841(b)(1)(B)(vii). The court sentenced Gordon to serve 292 months.[2]

Gordon appeals, objecting to the denial of his motion for judgment of acquittal, to a jury instruction on the lesser included offense, the limitation on his questioning of Deputy Wallenberg, and his sentence.

Gordon argues that the district court erred by not allowing him to cross examine Deputy Wallenberg about potentially exculpatory statements in his affidavit. He cites Rule 106 for the proposition that after one party inquires into a portion of a statement or writing, the other party must be allowed to show the full context by inquiring into

---

[2]Gordon argues that under Blakely v. Washington, 542 U.S. 296 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), his maximum sentence should have been 151 months, the guideline maximum for conspiracy to sell under 1000 kilograms of marijuana with a criminal history category III. U.S.S.G. §§ 2D1.1(5), 5A. There was no Sixth Amendment violation here, however, for facts which do not increase a sentence beyond the statutory maximum may be found by the court by a preponderance of the evidence. United States v. Booker, 543 U.S. 220, 327-28 (2005).

the rest of the statement.  See, e.g., United States v. King, 351 F.3d 859, 866 (8th Cir. 2003).  The government argues that Rule 106 does not apply because it limited its examination of Wallenberg to the facts and events of Gordon's arrest without inquiring into any statements or writings and that the question would have called for inadmissible hearsay in any event.

We review a district court's evidentiary rulings for abuse of discretion, including those regarding the scope of cross examination.  See, e.g., General Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997); King, 351 F.3d at 866.  On direct examination the government asked Deputy Wallenberg to describe the events of Gordon's arrest and release.  Wallenberg testified that he found $10460 in Gordon's vehicle, that a drug dog had alerted to the inside of the vehicle and the money, and that Gordon had been released after no drugs were found on him or in the vehicle.  That was all.  Rule 106 applies only to writings or recorded statements, not to acts or conversations.  See Ahlberg v. Chrysler Corp., 481 F.3d 630, 636 (8th Cir. 2007).  Because the government did not introduce Deputy Wallenberg's affidavit or inquire into it, Rule 106 has no application here.  See United States v. Edwards, 159 F.3d 1117, 1127 n.6 (8th Cir. 1998).  The district court acted within its discretion in limiting Gordon's cross examination to exclude hearsay statements.

Gordon argues the district court erred by denying his motion for judgment of acquittal, claiming that Helton was such an incredible witness that no reasonable jury could have credited his testimony and that without it there was insufficient evidence upon which to rest a guilty verdict.  A district court's denial of a motion for judgment of acquittal is reviewed de novo, with all evidence viewed in the light most favorable to the government.  United States v. Hilliard, 490 F.3d 635, 640 (8th Cir. 2007).  The jury assessed Helton's credibility, and no extraordinary circumstances exist which would allow us to review its credibility determination.  See, e.g., United States v. Milam, 494 F.3d 640, 643 (8th Cir. 2007).  The government offered evidence at trial that Gordon was involved in a conspiracy to distribute marijuana, 667 kilograms of

which had been seized from the truck driven by Helton. Helton testified that he had distributed over 2700 kilograms of marijuana with Gordon or at his direction. After Helton's arrest, Gordon called his phone several times and was later recorded having conversations with him about the truck. Viewing the evidence in the light most favorable to the government, there was sufficient evidence for conviction, and the district court did not err in denying Gordon's motion for a judgment of acquittal.

Gordon also argues that the district court should not have instructed the jury on the lesser included offense of conspiracy to distribute in excess of 100 kilograms of marijuana. He suggests that because the jury did not convict him of the greater offense of conspiracy to distribute in excess of 1000 kilograms of marijuana, Helton's testimony about his eight delivery trips must have been found not credible and that his testimony about the 667 kilograms seized on January 13, 2004 should therefore not have been credited either. He asserts that "[i]f the jury had not been given the lesser included offense instruction, it would not have found Mr. Gordon guilty." A district court's decision regarding whether to give a lesser included offense instruction is reviewed for abuse of discretion. United States v. Williford, 309 F.3d 507, 509 (8th Cir. 2002).

A jury instruction on a lesser included offense is appropriate upon a proper request if the lesser offense elements are identical to part of those of the greater offense, there was evidence which would justify conviction of the lesser offense, the proof on the element differentiating the two crimes was sufficiently in dispute so that the jury might consistently find the defendant innocent of the greater and guilty of the lesser included offense, and where the instruction could have been requested by either party. United States v. Dodd, 473 F.3d 873, 876 (8th Cir. 2007). The government's proof for the lesser included offense of conspiracy to distribute in excess of 100 kilograms of marijuana included the actual seizure of 667 kilograms of marijuana plus the testimony regarding Gordon's involvement in the conspiracy to distribute marijuana. The government's proof for the greater offense of conspiracy was limited

to Helton's testimony regarding the eight marijuana delivery trips he allegedly made prior to January 2004, with or under the direction of Gordon. Gordon vigorously contested the veracity of this testimony, and it was not unreasonable for the jury to find that Helton's testimony about those trips was insufficient to prove beyond a reasonable doubt that Gordon was guilty of the greater offense. The district court did not abuse its discretion in instructing the jury on the lesser included offense.

Gordon challenges the district court's calculation of his base offense level and its enhancements for possession of a dangerous weapon and his role in the offense. The district court's application of the sentencing guidelines is reviewed de novo and its factual findings are reviewed for clear error. United States v. Davidson, 437 F.3d 737, 739-40 (8th Cir. 2006).

A sentencing court's drug quantity calculations are factual findings and are therefore reviewed for clear error. E.g., United States v. Exson, 328 F.3d 456, 461 (8th Cir. 2003). The district court may consider as relevant conduct all drugs that the government shows by a preponderance of the evidence were a part of the same course of conduct or common scheme as the conspiracy, even where the defendant was acquitted of such conduct. See, e.g., United States v. Tirado, 313 F.3d 437, 440 (8th Cir. 2002); United States v. Jimenez-Villasenor, 270 F.3d 554, 561 (8th Cir. 2001); see also Booker, 543 U.S. at 254-55. Helton testified that he transported over 2700 kilograms of marijuana at the direction of Gordon, and this quantity was reflected in the presentence investigation report (PSR) recommendation that 1000 to 3000 kilograms of marijuana be attributed to Gordon. The district court found that the government proved by a preponderance of the evidence that Gordon conspired to distribute between 1000 and 3000 kilograms of marijuana and adopted the PSR, overruling Gordon's objections that his base offense level should have been 24 based on 100 kilograms of marijuana. The district court did not clearly err in holding Gordon responsible for 1000 to 3000 kilograms of marijuana.

Gordon also objects to his sentencing enhancements. Helton saw a 9 mm pistol in Gordon's briefcase on several occasions during their drug trips, and such a pistol was seized from Gordon's residence upon his arrest. Based on this evidence the district court did not clearly err in finding that Gordon possessed a dangerous weapon in connection with this offense or in imposing a two level enhancement under U.S.S.G. § 2D1.1(b)(1). See United States v. Gillispie, 487 F.3d 1158, 1162 (8th Cir. 2007) (enhancement should be applied where weapon present unless clearly improbable connection with offense exists); United States v. Dillard, 370 F.3d 800, 804 (8th Cir. 2004) (preponderance of evidence required for enhancement under § 2D1.1(b)(1)).

A defendant who assumes a leadership or organizing role in the conspiracy such as "recruiting others, determining the prices or location of sales, and so forth" may be found to be an organizer or leader of the conspiracy. United States v. Plancarte-Vazquez, 450 F.3d 848, 854 (8th Cir. 2006); see also United States v. Morin, 437 F.3d 777, 781 (8th Cir. 2006) (enhancement requires at least five people involved in operation but only one need be under defendant's direction). The government offered evidence that Gordon had recruited Helton into the conspiracy, had determined the price he would be paid and the location of marijuana sales, and had overseen and directed the actions of at least six or seven people in respect to the conspiracy. The district court did not err in finding that Gordon was an organizer or leader of the conspiracy or in enhancing his offense level accordingly by four levels pursuant to U.S.S.G. § 3B1.1(a).

The district court's calculation of Gordon's total offense level under the advisory sentencing guidelines was based upon findings which were supported by a preponderance of the evidence. Gordon's 292 month sentence was within the statutory range for the crime of which he was convicted and was not unreasonable.

For these reasons we affirm the judgment of the district court.

_____