# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2818

_____

Doug McCoy; Linda McCoy,        *
                                   *

             Appellees,        *
                                   *

Mutual Insurance Company,        *
                                   *

       Amicus Curiae Below,    *
                                   *   Appeal from the United States
      v.                           *   District Court for the
                                   *   Western District of Arkansas.
                                   *

Augusta Fiberglass Coatings, Inc.,   *
                                   *

           Appellant.        *

_____

Submitted: September 21, 2009
Filed: January 26, 2010

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Augusta Fiberglass Coatings, Inc. ("Augusta") appeals from an adverse jury verdict against it in a personal injury action filed by Doug McCoy and his wife, Linda McCoy. The McCoys alleged that Augusta manufactured a defective tank that proximately caused Doug McCoy's injuries. The McCoys originally sued Lion Oil Company ("Lion Oil")—where McCoy's injuries occurred.[1] They then amended their

_____

[1]The McCoys also originally sued certain "John Does."

complaint to state a cause of action for product liability against Augusta. Prior to trial, Lion Oil filed a third-party complaint against Custom Fiberglass Products, Inc. ("Custom"), McCoy's employer, and Custom and Augusta filed cross-claims against each other. The McCoys settled with Lion Oil and Custom's workers' compensation carrier who had intervened in the case. The case ultimately proceeded to trial with Augusta as the sole defendant. Despite Augusta being the sole defendant at trial, the jury was allowed to apportion fault to McCoy and Lion Oil, applying comparative fault principles of Arkansas law. The jury found in favor of the McCoys, finding that Augusta was 70 percent at fault for McCoy's injuries, Lion Oil was 20 percent at fault, and McCoy was ten percent at fault.

Augusta appeals, arguing that the district court[2] (1) erred in refusing to allow the jury to apportion fault to Custom in accordance with Arkansas Code Annotated § 16-55-202; (2) abused its discretion in refusing to instruct the jury that Custom's fault could be a superseding proximate cause of McCoy's injuries; and (3) abused its discretion in refusing to admit into evidence an occupational therapist's report. We affirm.

## I. *Background*

McCoy, an employee of Custom, and his supervisor, Luther Amos, arrived at Lion Oil to repair a leaking flange on a tank. Their vehicle contained hard hats, safety glasses, rubber gloves, and a pair of size 11 rubber boots—two sizes larger than McCoy normally wore. After their arrival at Lion Oil at noon, McCoy and Amos met Jeff Carr, a Lion Oil engineer, who showed them the tank in need of repair. Carr voiced concern about Amos and McCoy working on the tank because he knew that they might be exposed to caustic soda. According to Amos, Carr informed him and McCoy that there had been caustic soda in the tank. Amos shared concern about potential exposure to caustic soda while working on the tank, as he expected there to be some liquid in the gusset of the tank. After Amos went into the tank and observed

---

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

a defect in the tank's seal, he "figured there would probably be some [caustic soda]." Amos had worked with caustic soda before and was aware of its hazardous nature. When Amos had gotten the caustic soda on him in the past, he simply washed it off and continued working.

McCoy gave conflicting testimony on whether Carr, or any other Lion Oil employee, advised him and Amos that the tank at one time contained caustic soda prior to them beginning work on the tank.[3] But McCoy maintained that when he and Amos first viewed the tank, he could tell by looking at the flange that it was leaking because it had a white, chalky substance all over it. The substance had traveled down the tank and had dried. McCoy testified that when caustic soda dries, it turns white and chalky.

After Carr showed McCoy and Amos the tank, Lion Oil administered a safety course and safety test to McCoy and Amos. Amos passed the test, but McCoy did not. According to McCoy, he had difficulty understanding the test questions. McCoy had only completed the ninth grade, taking special education classes. While in school, McCoy had difficulty reading. After completing the ninth grade, he attended vocational technical school for four years but never received a general educational development (GED) certificate. A vocational rehabilitation expert testified that she

---

[3]First, McCoy testified that "when Jeff Carr took us over there to it, he mentioned that it was a caustic-acid type." He then clarified that Carr mentioned that the tank was a "caustic tank" containing "caustic soda." Later, when asked whether Carr told him that the tank at one time contained caustic soda, McCoy replied, "I didn't know it until he had told me when we got there and he showed [us the tank]." When asked whether Carr told him about the caustic nature of the tank *before* he worked on the tank or *after* he worked on the tank, McCoy stated, "It was when we went out there to look at the tank." McCoy explained that when he first went to look at the tank, Carr told him that the tank contained caustic soda. Thereafter, McCoy was questioned about his deposition testimony, in which he stated that he never knew that the tank contained caustic soda. McCoy replied that no Lion Oil employee ever informed him that the tank contained caustic soda. He said that prior to making his first cut on the tank he did not know that it contained caustic soda.

administered an intelligence test to McCoy, which revealed his intelligence quotient (IQ) to be 66, placing him in the borderline to mildly mentally handicapped range of intelligence. After McCoy failed the written safety test, a Lion Oil employee verbally reviewed the questions with McCoy.

At 3 p.m., McCoy and Amos started working on the tank.[4] According to McCoy, no one instructed him to wear rubber boots while working on the tank, and the rubber boots in the company work truck were not his size. Amos supervised McCoy while McCoy was cutting into the tank. Before McCoy cut into the gusset, Amos corrected McCoy on which way to turn the cutting wheel, as Amos thought that there might be liquid in the gusset. When McCoy made the initial cut, he noticed

_____

[4]Augusta manufactured the tank that McCoy and Amos worked on. Lion Oil directed that Augusta fabricate the tank using a standard known as RTP-1, which requires that each conical gusset have a weep hole at the low point of the gusset. The weep hole allows any liquid substance that might collect in the gusset to drain out. However, the tank that McCoy and Amos worked on contained no weep holes in the gusset. From June 2003 until the tank was placed into service in March 2004, the tank was located at Lion Oil and moved twice before it was installed. Carr speculated that the tank could have been bumped or rolled during this time.

Lion Oil had hired S&B Engineers and Constructors, Ltd. ("S&B") to help it prepare the specifications and drawings for the tank. The purchase requisition sent from Augusta to Lion Oil included a list of inspections that S&B was to perform. One of the tests listed was a hydrotest that Augusta was to perform and that S&B was to witness. Carr testified that S&B did not perform any of the inspections listed on the purchase requisition because of limited resources. But he testified that he also thought that he had seen an email from his superior to S&B stating that it was not necessary for S&B to do the inspection because Lion Oil would do it. Carr also stated that before the tank was put into service he had performed a hydrotest for leaks, which involved filling the tank with water. He certified that the tank had no leaks after completion of the hydrotest. But when the tank was filled to a depth of about four feet with caustic soda, Lion Oil observed a leak in the gusset. When Carr saw the leak, he could see liquid running down the tank and the white, powdery residue that was left when the caustic soda dried. This made it easy to see that there was an external leak, despite the absence of weep holes in the gussets.

-4-

about a half of a coffee cup of a substance spill from the gusset. Amos also saw the liquid come out of the gusset, but he did not see any of the liquid come into contact with McCoy. At Amos's direction, McCoy washed his foot and sock with a water hose. He then put the wet sock and his leather boot back on and returned to work. About 30 to 45 minutes later, McCoy noticed that his foot was burning. He informed Amos and Carr. Carr sent McCoy to the nurses' station, where his foot was cleansed, a cream was applied, and his foot was bandaged. McCoy signed a Lion Oil accident report that stated that the accident occurred as a result of McCoy walking in caustic water. McCoy sat in the company truck and did not work the rest of the day. After completing work on the tank, McCoy drove them home. That night, McCoy sought medical treatment for his foot.

McCoy and his wife sued Lion Oil and others, alleging that McCoy burned his foot on Lion Oil's premises when caustic soda escaped from a tank on which he was working. Lion Oil then filed third-party complaints against Augusta, S&B, and McCoy's employer, Custom. The district court permitted Custom's workers' compensation carrier, Mutual Insurance Company ("Mutual"), to intervene in the lawsuit. Augusta answered the third-party complaint, requesting that the negligence or fault of all parties found responsible be apportioned pursuant to Arkansas Code Annotated § 16-55-201.

Thereafter, S&B was dismissed without prejudice from the lawsuit. Lion Oil then filed a notice of nonparty liability pursuant to Arkansas Code Annotated § 16-55-202 against Custom, Augusta, and S&B. Custom then filed its cross-claim against Augusta. Augusta answered the cross-claim, requesting that the negligence or fault of all parties found responsible be apportioned pursuant to § 16-55-201. Additionally, Augusta cross-claimed against Custom and Lion Oil, pleading entitlement to contribution and indemnity under § 16-55-201.

After a settlement conference, the McCoys settled with Lion Oil and Mutual. As a result, Augusta moved to adopt Lion Oil's notice of nonparty liability as to

Custom and S&B and filed a notice of nonparty liability as to Lion Oil. The McCoys moved to strike Augusta's notice of nonparty liability as to Lion Oil and objected to Augusta's motion to adopt by reference Lion Oil's notice of nonparty liability as to Custom and S&B.

The district court then entered orders dismissing Lion Oil from the suit with prejudice and striking the notice of nonparty liability as to Custom because it was an immune employer under Arkansas law. According to the court, Custom's fault could not be apportioned by the jury, but its fault could be considered as a superseding proximate cause of McCoy's damages. The court also found that Lion Oil's fault could be apportioned by the jury. Subsequently, the district court ordered the dismissal of the following claims: (1) Lion Oil's claims against Custom; (2) the cross-claim by Augusta against Custom; and (3) Lion Oil's third-party complaint against Augusta. The remaining claims were (1) the McCoys' claims against Augusta and (2) Augusta's cross-claims against Lion Oil. Mutual remained as an intervener.

At trial, the district court did not permit the jury to apportion any fault to Custom; instead, the jury could only apportion fault to McCoy, Augusta, and Lion Oil. Also, the district court instructed the jury with regard to intervening/superceding proximate cause as follows:

> Defendant contends and has the burden of proving that following any act or omission on its part[,] an event, *such as the conduct of Lion Oil*, intervened that in itself caused damage completely independent of defendant's conduct. If you so find, then defendant's act or omission was not a proximate cause of any damage resulting from the intervening event because that event supercedes Defendant's conduct.

> The fact that another cause, *such as Lion Oil's conduct*, intervened between any act or omission on the part of the defendant, and the damage for which claim is made, would not relieve the defendant of liability if the damage is reasonably foreseeable as a natural and probable result of any act or omission on the part of the defendant.

(Emphasis added.) The district court declined to give Augusta's requested instruction, which stated that

> following any act or omission on [the defendant's] part[,] an event, *such as the conduct of Lion Oil or plaintiff's employer*, intervened that in itself caused damage completely independent of defendant's conduct.

(Emphasis added.)

The jury found in favor of the McCoys. The jury determined by a preponderance of the evidence that Augusta manufactured the tank in a defective condition, rendering it unreasonably dangerous, which was a proximate cause of the McCoys' damages. The jury apportioned fault between the parties as follows: (1) ten percent fault of McCoy, (2) 70 percent fault of Augusta, and (3) 20 percent fault of Lion Oil.

After the district court entered judgment, Augusta moved for judgment as a matter of law or for a new trial, and the district court denied the motion. In its denial order, the district court noted that in its pretrial order it had ruled that the jury would not be permitted to apportion fault to Custom because it was an immune employer.

## II. *Discussion*

On appeal, Augusta asserts that the district court (1) erred in refusing to allow the jury to apportion fault to Custom in accordance with Arkansas Code Annotated § 16-55-202; (2) abused its discretion in refusing to instruct the jury that Custom's fault could be a superseding proximate cause of McCoy's injuries; and (3) abused its discretion in refusing to admit into evidence an occupational therapist's report.

### A. *Apportionment of Fault to Custom*

A recent Arkansas Supreme Court decision has mooted Augusta's first argument that the district court should have permitted the jury to apportion fault to McCoy's employer, Custom, under Arkansas Code Annotated § 16-55-202. *See Johnson v.*

*Rockwell Automation, Inc.*, __S.W.3d__, 2009 Ark. 241 (2009). In *Johnson*, the defendant-manufacturer filed a "Notice of Nonparty Fault" pursuant to § 16-55-202, designating the plaintiff's employer as a nonparty at fault. In response, the plaintiff argued that "the nonparty-fault provision" of § 16-55-202 violated the Arkansas Constitution. *Id.* The Arkansas Supreme Court agreed, holding that "the nonparty-fault provision invades the powers granted to the judiciary by the Arkansas Constitution in violation of Article 4, § 2 and Amendment 80, § 3 by adding to or varying the Arkansas Rules of Civil Procedure." *Id.*

When a provision is struck down as unconstitutional, "'it is treated as if it had never been passed.'" *Newton v. Clinical Reference Lab., Inc.*, 517 F.3d 554, 556 (8th Cir. 2008) (quoting *Land O'Frost, Inc. v. Pledger*, 823 S.W.2d 887, 889 (1992)). Thus, the law reverts back to what it was prior to the passage of the Civil Justice Reform Act, under which the jury could not apportion the fault of nonparties. *See, e.g.*, *Belz-Burrows, L.P. v. Cameron Constr. Co.*, 78 S.W.3d 126, 129 (Ark. Ct. App. 2002) ("[A] jury should not be permitted to assign a percentage of fault to a person who is not a party to the suit.").

Therefore, the district court appropriately declined to allow the jury to assign a percentage of fault to Custom, a nonparty to the suit.

## B. *Jury Instructions*

Augusta next argues that, although the district court previously ruled that the jury could consider any fault of Custom as an intervening proximate cause of the McCoys' damages at trial, it failed to give Augusta's proffered jury instruction, which would have allowed the jury to consider the negligence of Lion Oil *and* Custom as an intervening proximate cause. Augusta asserts that ample evidence exists to show that following any act or omission on its part, Custom's negligence caused McCoy's damage completely independent of Augusta's manufacturing defect. It also points out that intervening proximate cause is normally a question of fact for the jury to determine.

In response, the McCoys maintain that the district court correctly denied Augusta's jury instruction on intervening proximate cause because an intervening proximate cause is an event that occurs after the defendant's act or omission that, in itself, causes damage completely independent of the defendant's conduct. According to the McCoys, it is undisputed that the gussets on the tank did not have weep holes, as required by the specifications. The testimony also shows that if Augusta had drilled weep holes in the gusset, the caustic soda would have escaped prior to McCoy servicing the tank; therefore, there is no other conclusion but that Augusta provided a product in a defective condition and that this defective condition was the proximate cause of McCoy's injury.

We review a district court's jury instructions for an abuse of discretion. *Brown v. Sandals Resorts Int'l.*, 284 F.3d 949, 953 (8th Cir. 2002). A district court possesses "broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity." *Id*. (internal quotations and citation omitted). "Our review is limited to whether the jury instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." *Id*. (internal quotations and citation omitted). When sitting in diversity, a district court's jury instructions "must fairly and adequately represent the law of the forum state." *Id*. "The jury should receive instructions on issues supported by competent evidence in the record; the trial court is not required to instruct on issues that do not find support in the record." *Id*. And, even if we find that a district court erroneously instructed the jury, we will reverse "only where the error affects the substantial rights of the parties." *Id*.

As an initial matter, we observe that the district court's jury instruction did not prohibit the jury from considering whether any fault of Custom constituted an intervening proximate cause, thereby absolving Augusta of liability. The district court's instruction advised the jury that Augusta had the burden to prove that, "following any act or omission on its part[,] an event, *such as the conduct of Lion Oil*, intervened that in itself caused damage completely independent of defendant's

conduct." (Emphasis added.) The instruction then advised the jury that if it such an intervening event occurred, then Augusta's "act or omission was not a proximate cause of any damage resulting from the intervening event because that event supercedes [Augusta's] conduct."

"An objective reader would interpret the phrase 'such as' to mean 'for example.'" *Orion Financial Corp. of S.D. v. American Foods Group, Inc.*, 281 F.3d 733, 739 (8th Cir. 2002). Therefore, "the conduct of Lion Oil" was only one example of a potential intervening event. The jury instruction did not foreclose the jury from considering Custom's conduct as an intervening event. Thus, the district court's jury instructions were not erroneous.

### C. *Occupational Therapist's Report*

Finally, Augusta contends that the district court erred in excluding the report of Bruce O'Dell, an occupational therapist to whom McCoy was referred by one of his treating physicians. The McCoys objected to the introduction of the report into evidence, asserting that O'Dell had not been disclosed as an expert pursuant to Federal Rule of Civil Procedure 26 and that his report contained conclusions. According to Augusta, the disclosure requirements of Rule 26(a)(2) were inapplicable because it did not retain O'Dell as an expert. Augusta argues that the McCoys knew of O'Dell and possessed a copy of O'Dell's report at least four months before the scheduled trial date. Augusta contends that Rule 26(a)(2)(B) requires disclosure of an expert's written report only "if the witness is one retained or specially employed to provide expert testimony in the case" and that O'Dell was neither retained nor specially employed by Augusta.

Additionally, Augusta asserts that, during the McCoys' cross-examination of O'Dell, the McCoys' attorney repeatedly read from and referred to specific portions of the report and, at that time, the entirety of the report became admissible under Federal Rule of Evidence 106. As a result, Augusta argues that the district court erroneously continued its refusal to allow the entire report admitted into evidence.

In response, the McCoys maintain that the district court correctly excluded O'Dell's report because the report contained numerous hearsay statements that did not fall under any exception to the hearsay rule. The McCoys note that O'Dell is not McCoy's treating physician and was not disclosed to them as an expert witness. Additionally, O'Dell's report was not disclosed during discovery. Therefore, the McCoys argue that the district court correctly allowed O'Dell to testify about his in-office examination of McCoy but not about the opinions contained in the report. Finally, the McCoys argue that their attorney did not introduce the report or read from it; instead, he followed the district court's instructions and only questioned O'Dell about his in-office examination of Doug McCoy.

### 1. *Federal Rule of Civil Procedure 26*

> Rule 26(a) requires disclosure of each individual likely to have discoverable information, providing a copy of all relevant documents in the party's possession or control, and identifying any person who may be used to present expert testimony. Fed. R. Civ. P. 26(a). Disclosure of any retained witness, or person "specially employed to provide expert testimony in the case whose duties as an employee of the party regularly involve giving expert testimony," must "be accompanied by a written report prepared and signed by the witnesses." Fed. R. Civ. P. 26(a)(2)(B). Failure to disclose an expert witness required by rule 26(a)(2)(B) can justify exclusion of testimony at trial. Fed. R. Civ. P. 37(c)(1).

*Crump v. Versa Prod., Inc.*, 400 F.3d 1104, 1110 (8th Cir. 2005).

Here, Augusta did call O'Dell as a witness at trial. Augusta had not previously disclosed O'Dell as an expert. But Augusta asserts that it did not disclose O'Dell as an expert because it had not "specially employed" or retained O'Dell as an expert within the meaning of Rule 26(a)(2); instead, O'Dell's report was disclosed to all parties by Mutual, Custom's workers' compensation carrier. Augusta points out that the McCoys were provided with the identification of O'Dell and his report well in advance of trial; additionally, the McCoys identified O'Dell's report as a trial exhibit in their pretrial

disclose sheet and actually arranged for their own vocational counselor to testify in response to O'Dell's report.

We need not extensively analyze the district court's ruling on this issue. Assuming the district court erroneously excluded the report, Augusta has failed to argue how it was *prejudiced* by the district court's failure to admit O'Dell's report into evidence. "We review a district court's evidentiary rulings for clear abuse of discretion" and will reverse the district court "only when an improper evidentiary ruling affected a party's substantial rights or had more than a slight influence on the verdict." *United States v. Missouri*, 535 F.3d 844, 848 (8th Cir. 2008) (internal quotations, alteration, and citation omitted). "We will not reverse if the error was harmless." *Id*. Because Augusta has failed to show how the district court's failure to admit the report affected its substantial rights, we hold that there is no reversible error.

### 2. *Federal Rule of Evidence 106*

Augusta also asserts that the district court's error of not admitting O'Dell's report into evidence was "compounded when, during the cross-examination of Mr. O'Dell, the McCoys' attorney repeatedly read from and referred to specific portions of the report, but the district court continued to refuse to allow the entire report to be admitted into evidence." Augusta argues that, during the McCoys' cross examination of O'Dell, the district court should have ruled the entire report admissible pursuant to Federal Rule of Evidence 106.

In response, the McCoys note that Rule 106 only allows a party to introduce into evidence a writing or part of a writing if the opposing party introduces a portion of the writing. They maintain that the rule does not apply here because their counsel did not "introduce" a portion of the report into evidence, nor did counsel "read" from the report. Instead, counsel was simply asking O'Dell about the report. Furthermore, when the district court asked their counsel to rephrase the question, he complied with the district court's request.

Rule 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." "Additional parts of the recording can be admitted if they are necessary to '(1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.'" *United States v. Flentge*, 151 F. App'x 490, 491–92 (8th Cir. 2005) (unpublished per curiam) (quoting *United States v. Sweiss*, 814 F.2d 1208, 1211–12 (7th Cir. 1987)). "Rule 106 applies only to writings or recorded statements, not to acts or conversations." *United States v. Gordon*, 510 F.3d 811, 816 (8th Cir. 2007). It has no application where the party does not introduce the document into evidence "or inquire into it." *Id.*

"To sustain a Rule 106 objection, 'the party urging admission of an excluded conversation must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted.'" *Flentge*, 151 F. App'x at 492 (quoting *United States v. King*, 351 F.3d 859, 866 (8th Cir. 2003)). A district court possesses "'broad discretion to conduct the trial in an orderly and efficient manner, and to choose among reasonable evidentiary alternatives to satisfy the rule of completeness.'" *Id.* (quoting *United States v. Webber*, 255 F.3d 523, 526 (8th Cir. 2001)).

In *Flentge*, the defendant "never identified which portions of the record would be relevant to the trial and how the additional excerpts would place the government's evidence in context." *Id.* Instead, the defendant "simply aver[red] the entire conversations should have been admitted 'to explain the circumstances surrounding the portions of the conversations the government admitted into evidence during trial which misled the jury into a wrongful conviction.'" *Id.* We held that "[w]ithout further explanation, [the defendant] has not met his burden under Rule 106, and the district court did not err." *Id.*

Here, when McCoy's counsel allegedly began reading from the report, Augusta's counsel stated, "Your Honor, if counsel's going to read part of the report, I request that he reads all of the report." At no time did Augusta's counsel specify why the district court should admit the entire report or, as in *Flentge*, which portions of the report would be relevant to the trial. As in *Flentge*, without further explanation, Augusta did not meet its burden under Rule 106.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____