# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2846
_____

United States of America

*Plaintiff - Appellee*

v.

Jeremy Aungie

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 22, 2020
Filed: July 12, 2021

_____

Before COLLOTON, GRASZ, and STRAS, Circuit Judges.

_____

GRASZ, Circuit Judge.

A jury convicted Jeremy Aungie of two counts of aggravated sexual abuse of a child under 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(A). The district court[1] sentenced Aungie to concurrent terms of 420-months imprisonment and five years

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

of supervised release for each count. Aungie raises five issues on appeal, arguing the district court erred by (1) denying his motion for judgment of acquittal for insufficient evidence, (2) denying his motions to exclude evidence of prior drug and alcohol use, (3) excluding expert testimony and his request for a *Daubert* hearing,[2] (4) excluding text messages, and (5) excluding evidence of the victim's alleged motive to lie. We affirm.

## I. Background

Aungie and his two children, a boy (J.A.) and a girl (A.A.), lived in a three-bedroom home on the Yankton Sioux Indian Reservation with nine other family members, including Aungie's parents, his sister, his brother, and his brother's five young children. Aungie and his children shared one bedroom. A.A. and J.A.'s mother left the home when the children were two and three years old. They were allowed visitation with their mother one day each week but, generally, saw her less frequently. A.A. felt she had a close, trusting relationship with her mother, brother, and several friends.

In spring 2018, when A.A. was thirteen years old, her grades deteriorated, she began cutting herself, and she was suspended from school for fighting. A.A.'s grandmother, who was also her guardian, punished A.A. by smashing her phone. After her suspension, A.A. decided to leave home. A.A. packed items in her school backpack and went to her mother, who was staying at a hotel near the school. Within days, A.A. disclosed to her mother that her father had sexually abused her for years.

At trial, A.A. described incidents when Aungie struck and sexually assaulted her, generally while he was intoxicated. The sexual assaults began when she was eight or nine. Aungie woke A.A. from sleeping by touching her underneath her underwear, pulling her hair and telling her to lay down when she resisted. As time

---

[2]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, denied Aungie's motions to exclude expert testimony and to hold a *Daubert* hearing before the case was reassigned to Judge Piersol.

went on, Aungie would lock the bedroom door, tell A.A. what to do, and hit her when she did not comply with his commands or resisted sexual assaults. A.A. said she would sometimes escape by saying she had to use the bathroom or by staying with her grandmother. A.A. testified she was too scared to tell anyone because she feared her family would be mad at her, and Aungie would go to jail or kill her and himself, as he had threatened. She explicitly denied accusing her father of committing these acts only because she was angry about discipline or because she wanted to live with her mother.

## II. Discussion

### A. Judgment of Acquittal

Aungie argues the district court erred by denying his motion for judgment of acquittal because his convictions for sexually assaulting his daughter were not supported by corroborating evidence. "We review *de novo* the denial of a motion for judgment of acquittal." *United States v. Golding*, 972 F.3d 1002, 1005 (8th Cir. 2020) (quoting *United States v. Cook*, 603 F.3d 434, 437 (8th Cir. 2010)). "We apply the same standard of review to the district court's ruling on a motion for judgment of acquittal as we do to a sufficiency of the evidence challenge." *Id.* (quoting same). Accordingly, "[t]his court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *United States v. Benton*, 890 F.3d 697, 708 (8th Cir. 2018) (quoting *United States v. Boesen*, 491 F.3d 852, 856 (8th Cir. 2007)). We will affirm the conviction if after "taking all facts in the light most favorable to the verdict, a reasonable juror could have found the defendant guilty of the charged conduct beyond a reasonable doubt." *United States v. Frommelt*, 971 F.3d 823, 827 (8th Cir. 2020) (quoting *United States v. Sainz Navarrete*, 955 F.3d 713, 718 (8th Cir. 2020)).

Aungie contends A.A.'s testimony was vague and without support. "However, '[i]t is for the jury, not a reviewing court, to evaluate the credibility of

witnesses and to weigh their testimony.'" *United States v. Never Misses A Shot*, 781 F.3d 1017, 1025 (8th Cir. 2015) (alteration in original) (quoting *United States v. Mallen*, 843 F.2d 1096, 1099 (8th Cir. 1988)). The jury serves as "the final arbiter of the witnesses' credibility, and we will not disturb that assessment." *Id.* at 1026 (quoting *United States v. Listman*, 636 F.3d 425, 430 (8th Cir. 2011)). Moreover, "[i]t is well established that the uncorroborated testimony of a single witness may be sufficient to sustain a conviction." *United States v. L.B.G.*, 131 F.3d 1276, 1278 (8th Cir. 1997) (quoting *United States v. Dodge*, 538 F.2d 770, 783 (8th Cir. 1976)); s*ee United States v. DeCoteau*, 630 F.3d 1091, 1097 (8th Cir. 2011) ("[A] victim's testimony alone can be sufficient to prove aggravated sexual abuse.").

Here, although A.A.'s testimony was, at times, imprecise, she provided enough detail about the who, what, when, where, and how to support the sexual assault convictions. Specifically, A.A. testified Aungie touched her "middle part," clarifying it is "the place I pee out of," and "stuck his middle part," which is "the place he pees out of" inside her "butt" and "between [her] legs" inside her middle part. A.A. testified that her father first touched her "middle part" when she was eight or nine years old, and that he sexually assaulted her when she was thirteen years old. A.A. was also able to describe potential effects from the sexual abuse such as her fear of getting pregnant. Finally, she provided her reasoning for disclosing the sexual and physical abuse when she did. Taking A.A.'s testimony in the light most favorable to the verdict, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence to support the jury's verdict, there is sufficient evidence to support Aungie's conviction.

## B. Evidentiary Rulings

"We review evidentiary rulings for abuse of discretion." *United States v. Keys*, 918 F.3d 982, 985 (8th Cir. 2019). "We reverse only 'if the district court's evidentiary rulings constitute a clear and prejudicial abuse of discretion.'" *Id.* (quoting *Never Misses A Shot*, 781 F.3d at 1027). "[O]nly when an improper evidentiary ruling affected the defendant's substantial rights or had more than a

slight influence on the verdict" will we reverse. *United States v. Johnson*, 860 F.3d 1133, 1139 (8th Cir. 2017) (quoting *United States v. Picardi*, 739 F.3d 1118, 1124 (8th Cir. 2014)). "We will not reverse a harmless error." *Id.*

## 1. Aungie's Prior Bad Acts

Aungie argues the district court erred by allowing testimony about his drug and alcohol use, as well as violent conduct. The government contends testimony about Aungie's intoxication and violence against A.A. and other family members was relevant to A.A.'s fear of reporting the abuse. We review a trial court's admission of Rule 404(b) evidence for abuse of discretion "and will reverse only when such evidence clearly had no bearing on the issues in the case and was introduced solely to prove the defendant's propensity to commit criminal acts." *United States v. Benitez*, 531 F.3d 711, 716 (8th Cir. 2008).

Rule 404(b)(1) provides "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Rule 404(b) is a rule "of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." *United States v. LaFontaine*, 847 F.3d 974, 981 (8th Cir. 2017) (quoting *United States v. Contreras*, 816 F.3d 502, 511 (8th Cir. 2016)). To determine whether the evidence was properly admitted, this court uses a four-part test evaluating whether "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." *Id.* (quoting *Contreras*, 816 F.3d at 511).

Before trial, the district court excluded some evidence of Aungie's violent or drug-related conduct unknown to A.A.; however, the district court indicated it would

allow such evidence to the extent A.A. testified Aungie was drunk or high during commission of the sexual assaults, how she knew he was drunk or high, or the conduct was connected to A.A. being afraid of him. At trial, A.A. testified about specific instances when Aungie sexually abused her or physically assaulted her and others in the family while he was intoxicated. A.A. also expressed fear of reporting abuse due to Aungie's threat of additional violence against her. A.A. testified to instances of violence, including instances when Aungie covered her with blankets, struck her face, pulled her hair, and knuckle-punched her in the back during sexual assaults.

Physical abuse of the victim and close family members may be relevant by "provid[ing] a context for the sexual abuse and a cogent explanation for . . . failure to report the sexual abuse" earlier. *United States v. Plumman*, 409 F.3d 919, 928–29 (8th Cir. 2005) (noting the challenged evidence demonstrated a "culture of coercion" in the home). Much of A.A.'s testimony about Aungie's intoxication and violence directly related to the assaults he perpetrated against her, either during the assaults or close in time. A.A. personally observed the conduct and described its effect on her. The single time A.A. mentioned drug use, which was not connected to the assaults, the district court promptly told the jury to "disregard it." Aungie fails to show undue prejudice or how any potential prejudice substantially outweighed the probative value of the evidence.

## 2. Expert Testimony and *Daubert* Hearing

Aungie argues the district court erred by denying him a *Daubert* hearing and by allowing expert testimony from a forensic interviewer and pediatrician. Aungie contests the expert testimony, detailing the lack of physical findings in most cases of sexual assault and the reasons why children might not immediately disclose abuse. Aungie also argues he was surprised at trial by the expert testimony of previously undisclosed medical literature and studies, which would have been disclosed during a *Daubert* hearing, and this unfairly prejudiced his defense.

"We will not reverse a district court's ruling on the admissibility of expert testimony absent a clear and prejudicial abuse of discretion." *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) (internal quotation marks omitted) (quoting *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010)). Rule 702 governs the admissibility of expert witness testimony by allowing someone "who is qualified as an expert by knowledge, skills, experience, training, or education [to] testify in the form of an opinion[.]" "A district court has great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." *Wholesale Grocery*, 946 F.3d at 1000 (quoting *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 776 (8th Cir. 2004)).

Aungie argues a trial court is obligated to hold a hearing after any *Daubert* challenge to expert testimony. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). However, the trial court is not always required to hold a *Daubert* hearing before qualifying an expert witness, and "when the district court is satisfied that the testimony is 'reasonably based on [the expert's] education, training, and experience, the court does not abuse its discretion by admitting the testimony without a preliminary hearing.'" *Johnson*, 860 F.3d at 1139 (alteration in original) (quoting *United States v. Kenyon*, 481 F.3d 1054, 1061 (8th Cir. 2007)); *accord United States v. Evans*, 272 F.3d 1069, 1094 (8th Cir. 2001) ("There is no requirement that the District Court always hold a *Daubert* hearing prior to qualifying an expert witness[.]").

Aungie does not dispute the experts' qualifications or the reliability of the testimony about A.A.'s examination and forensic interviews under Rule 702. Rather, Aungie asserts he was prejudiced at trial because the studies relied upon by the experts were not made available to him. Specifically, he argues expert testimony about the lack of physical findings in abuse cases and delayed disclosures as described by the experts based on previously undisclosed studies placed him at an unfair disadvantage.

We have previously upheld the admission of expert testimony regarding the general characteristics exhibited by sexually abused children. *See United States v. Kirkie*, 261 F.3d 761, 765–66 (8th Cir. 2001). Further, we have allowed "expert testimony about the 'emotional and psychological traits of abuse victims that often account for behavior such as delay in reporting the abuse or failure to "escape" the abusive situation.'" *Johnson*, 860 F.3d at 1140 (quoting *United States v. Johns*, 15 F.3d 740, 743 (8th Cir. 1994)); *accord United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) ("[A] qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits.").

Here, the district court determined no hearing was necessary and the experts were qualified based on their knowledge, skill, experience, training, and education. The district court concluded the experts' expected testimony would be based on their respective experience and training and the testimony was consistent with admissible testimony in other child victim cases. Additionally, the experts were forbidden to improperly bolster A.A.'s testimony or offer any diagnosis. We do not find the district court abused its discretion in declining to hold a *Daubert* hearing and in allowing the two witnesses to testify as expert witnesses.

Subsequently at trial, the experts testified based on their qualifications and mentioned relevant medical literature. Additionally, on cross-examination, one expert mentioned several previously undisclosed studies supporting the testimony when asked about "particular research that may be out there[.]" Aungie's counsel elicited some of the information, then did not object or seek a continuance for the purpose of reviewing or responding. Under these circumstances, we conclude that there was no abuse of discretion in admitting the evidence at trial.

### 3. Text Messages

Aungie argues the district court improperly excluded mobile telephone text messages as hearsay when the messages should have been admitted through the

present sense impression hearsay exception or, in fairness, for completeness. This court reviews evidentiary rulings about hearsay statements for a clear abuse of discretion. *United States v. Sheridan*, 859 F.3d 579, 583 (8th Cir. 2017).

Hearsay is a statement made "not . . . while testifying at the current trial or hearing" and is offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is, of course, generally not admissible. Fed. R. Evid. 802. But Rule 803 allows hearsay evidence in certain circumstances, including if such statement is a "present sense impression"—that is—"[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).

Aungie argues his text messages with A.A. show a loving relationship between the two of them and reflect the love (i.e., the condition) they share immediately upon sending and receiving the messages. Alternatively, Aungie argues the trial court should have admitted the text messages in fairness, under the rule of completeness, because the government presented text messages showing a negative relationship (e.g., A.A. breaking family rules and Aungie responding with directives and "foul language").

In accordance with the rule of completeness, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "[T]he district court has broad discretion . . . to choose among reasonable evidentiary alternatives to satisfy the rule of completeness[.]" *United States v. Mohamed*, 727 F.3d 832, 837 (8th Cir. 2013) (quoting *United States v. Webber*, 255 F.3d 523, 526 (8th Cir. 2001)). Nevertheless, "[t]he party urging admission" has the burden to "specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted." *Id.* (alteration in original) (quoting *United States v. King*, 351 F.3d 859, 866 (8th Cir. 2003)). "[T]he rule . . . 'operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted

by the introduction of the full text of the out-of-court statement.'" *United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004) (quoting *United States v. Awon*, 135 F.3d 96, 101 (1st Cir. 1998)). This is a rule of timing rather than an exception trumping other exclusionary rules. *Id.*

We conclude the excluded text messages were hearsay and did not constitute present sense impressions. Further, the excluded texts were unnecessary to complete the context of the included communications because they were not parts of the same conversation. The rule of completeness serves as a fairness mechanism to ensure the jury is not misled by only admitting part of a writing or recorded statement. The government presented, without objection, a selection of text messages indicating A.A. was not following family rules, and Aungie used foul language in his response. Aungie attempted to introduce specific text messages separate from the text conversations admitted. Aungie's proposed text messages did not provide context to the admitted texts but were unrelated and selected only to show he and A.A. also exchanged normal and loving messages, specifically messages where he told A.A. he loved her. Further, the rule of completeness does not apply because Aungie fails to specify how the admitted text messages distorted or misled the jury without the addition of the missing texts. Accordingly, the district court did not abuse its discretion by excluding the text messages themselves.

Even if the trial court's decision to exclude this evidence was an abuse of discretion, it was harmless. The information Aungie sought to elicit, if not the exact wording of the messages, was admitted into evidence. These excluded messages' content was conveyed to the jury during A.A.'s cross-examination when she testified that she would text her dad she loved him and through another witness who testified that most of the texts between Aungie and A.A. were normal and loving.

### 4. Motive to Lie

Aungie argues the district court erred by preventing him from presenting evidence suggesting A.A. had reasons to lie about the sexual abuse. The evidence

-10-

he sought to admit included details of A.A.'s misbehavior (reasons for fighting and alcohol use) and her desire to live with her mother. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, a trial "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The district court ruled the specific reasons for A.A. fighting at school and evidence of her alcohol use were irrelevant. Nevertheless, A.A. did testify about how she had gotten into trouble for fighting, was suspended from school, and had always wanted to live with her mother. Because evidence of A.A.'s behavior leading up to her decision to disclose the sexual abuse reached the jury, any error from excluding specific details of A.A.'s misbehavior was harmless. We conclude the district court's rulings did not affect Aungie's substantial rights or have more than a slight influence on the verdict.

### III. Conclusion

For the reasons stated above, we affirm the judgment of the district court.

_____