# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1558
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Lance Walker

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern
_____

Submitted: January 12, 2024
Filed: June 3, 2024
_____

Before LOKEN, KELLY, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

Following a jury trial, Robert Lance Walker was convicted on five drug and firearm counts. The district court[1] imposed a total sentence of 80 months of

_____

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

imprisonment and 5 years of supervised release. Walker appeals three of his convictions[2] as well as his sentence. We affirm.

I.

Walker asserts that the evidence adduced at trial was insufficient to support three of his convictions, which is an argument he also made to the district court.[3] We review such a challenge de novo, "viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences." United States v. Oliver, 90 F.4th 1222, 1224 (8th Cir. 2024) (quoting United States v. Thompson, 11 F.4th 925, 929 (8th Cir. 2021)); United States v. Aungie, 4 F.4th 638, 643 (8th Cir. 2021) (standard of review). We will reverse a conviction only if "no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." Oliver, 90 F.4th at 1225.

A.

The conduct charged in Count 2, possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), occurred on November 12, 2019. The drugs at issue—eight individually packaged bags of cocaine contained inside a larger bag—were found on the passenger floorboard after Walker's car was pulled

---

[2]There were six counts in the Superseding Indictment. Walker does not appeal his convictions on two counts of cocaine possession (Counts 1 and 3). Count 5—knowingly and intentionally possessing a firearm in furtherance of a drug-trafficking crime—was dismissed.

[3]These three convictions relate to conduct that occurred during three separate events. We discuss each incident in the context of the related charge. Walker stipulated that at the time of each incident involving a firearm or ammunition, he had a prior conviction of a crime punishable by more than one year of imprisonment and that he had knowingly been convicted. See Old Chief v. United States, 519 U.S. 172, 191–92 (1997); Rehaif v. United States, 588 U.S. 225, 227 (2019).

over by police. The jury heard testimony that Walker was driving the car and that one of the officers recognized it as "[Walker's] car." When the officer approached, he saw two plastic baggies of marijuana in plain view on the center console, and he asked Walker to exit the car. Walker complied, and as he was getting out, he grabbed one of the baggies of marijuana with his left hand. With his right hand, he put something down the back of his pants "like he was trying to conceal it." Walker refused to show his hands when directed to do so, and an officer placed him in handcuffs. When Walker was subsequently searched, a plastic bag containing six individually wrapped cocaine rocks fell out of his pants. Another baggie of cocaine was found in Walker's pocket, as well as $610 in cash. During his interaction with the officers, Walker told them he wanted to "work with" them, which, as the officers explained at trial, they interpreted to mean "he wanted to provide information about drug activity [in exchange] for leniency."

On appeal, Walker argues that the government failed to establish that he knowingly possessed the cocaine on the passenger-side floorboard. See United States v. Young, 68 F.4th 1095, 1098 (8th Cir. 2023) ("[T]he government has the burden of proving beyond a reasonable doubt that [a defendant] both knowingly possessed and intended to distribute the drugs." (quoting United States v. Morales, 813 F.3d 1058, 1065 (8th Cir. 2016))). The government presented no evidence that Walker was in actual possession of these drugs, but possession can be actual or constructive. United States v. Tenerelli, 614 F.3d 764, 769 (8th Cir. 2010). "[T]o prove constructive possession, the government must establish some nexus between a defendant and the contraband; mere physical proximity to the contraband is insufficient." Young, 68 F.4th at 1098 (quoting United States v. Williams, 39 F.4th 1034, 1045 (8th Cir. 2022)). "Constructive possession is defined as knowledge of presence of the contraband plus control over the contraband. Evidence showing a person has dominion over the premises in which the contraband is concealed establishes constructive possession." Id. (quoting United States v. Wright, 739 F.3d 1160, 1168 (8th Cir. 2014)). "Knowledge can be inferred from the surrounding circumstances. For instance, a defendant's control and dominion over a vehicle can indicate knowledge of its contents." Id. (quoting United States v. Wilson, 619 F.3d

787, 796 (8th Cir. 2010)). "Additional evidence of the defendant['s] knowledge [can come] from their own statements and their demeanor following the arrest." United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004).

Walker contends that for the jury to conclude that he constructively possessed the drugs in the passenger-side of the car it had to make inferences based solely on "conjecture or speculation." But the jury heard evidence that the cocaine was found in the car Walker was driving, and that the car was described as "his car," indicating, but not definitively establishing, his knowledge of and control over the drugs found inside. See Wright, 739 F.3d at 1168. The jury also heard about Walker's conduct during the traffic stop, as well as his statements and demeanor when interacting with the officers. Viewing this evidence in the light most favorable to the verdict and giving the government the benefit of all reasonable inferences, see Aungie, 4 F.4th at 643, a reasonable jury could have found beyond a reasonable doubt that Walker had the requisite knowledge of and control over the cocaine found on his car's passenger-side floorboard to support a guilty verdict based on constructive possession.

B.

Next, Walker argues there was insufficient evidence to support his conviction on Count 4, possession of a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). "To establish firearm possession, the government had to prove actual or constructive possession beyond a reasonable doubt." United States v. Parker, 871 F.3d 590, 604 (8th Cir. 2017) (citation omitted). And to do so, the government was required to "show a sufficient nexus between [Walker] and the firearm." Id. at 603 (quoting United States v. Garrett, 648 F.3d 618, 622 (8th Cir. 2011)).

The conduct underlying this charge took place in the early morning of November 17, 2020, when police officers stopped the car Walker was driving for a traffic violation. After officers turned on their lights, Walker sped up, pulled into a

parking lot, and got out of the car and ran. Officers chased him down the street and through an alleyway, where he was taken into custody and handcuffed. Officers found cocaine, marijuana, and cash in Walker's possession. Notably, as Walker walked with the officers several blocks back to their parked squad car, he yelled "damn" just as the group passed by a yellow plastic bag on the ground.

One of the officers who had been at the scene testified that he looked in the area where Walker had fled to see if he had discarded anything along the way—this, the officer testified, was his "typical[]" practice. The officer found a loaded handgun on Walker's flight route; the gun was found "just a few yards in front of [Walker's] car still on [the] driver's side, so it would have been right where [Walker] ran." And it was "next to" the yellow plastic bag on the ground. The jury also heard that the officer who picked up the gun thought two things were unusual about it. First, the gun was "still warm to the touch" when the officer picked it up even though it was "pretty cold, in the lower 40s" that night. Second, "the barrel was plugged with dirt, had a lot of dirt around. It looked like it had been spiked into the ground really hard." He clarified that the barrel being "plugged with dirt" "indicated to [him] that it had been thrown down on the ground." No one else was located in the area at the time.

Giving the government the benefit of all reasonable inferences and viewing the evidence presented in the light most favorable to the verdict, a reasonable jury could find a sufficient nexus between Walker and the firearm found along the route he ran. And such a finding would support a verdict beyond a reasonable doubt that Walker knowingly possessed the firearm.

C.

Walker also challenges the sufficiency of the evidence on Count 6, which charged him with possessing ammunition after being convicted of a felony, in violation of § 922(g)(1). See United States v. Two Hearts, 32 F.4th 659, 662 (8th Cir. 2022) (requiring government to show, *inter alia*, defendant knowingly

possessed a firearm); 18 U.S.C. § 922(g) (making firearm and ammunition interchangeable).

At trial, the jury heard testimony that on October 23, 2019, police officers went to the apartment where Walker was known to live with his girlfriend with a warrant for Walker's arrest. They knew Walker was likely to be home because his white Dodge Challenger with a red stripe down the middle was parked outside the apartment, where they had seen it in the past. They knocked at the apartment door, Walker opened it, and he was immediately taken into custody. Officers proceeded to search the apartment, and a detective found ammunition for a rifle on top of the kitchen cabinets.

A jury could reasonably conclude that Walker had dominion over the apartment where he lived with his girlfriend. Indeed, he answered the door to the apartment and was the only person home on the day of the arrest. See United States v. Davis, 449 F.3d 842, 846 (8th Cir. 2006) ("The government can prove constructive possession by showing that the defendant had 'dominion over the premises where the firearm [was] located.'" (quoting United States v. Claybourne, 415 F.3d 790, 795–96 (8th Cir. 2005))); United States v. White, 816 F.3d 976, 986 (8th Cir. 2016) ("In the absence of evidence refuting the normal inference of dominion, showing that a firearm [or ammunition] was discovered at the defendant's residence suffices to prove constructive possession." (citation omitted)). But in a case like this one involving a shared residence, "mere dominion is insufficient to show that the defendant knowingly possessed a gun." United States v. Ramos, 852 F.3d 747, 754 (8th Cir. 2017). "Rather, the government must provide additional evidence of a link between the contraband and the defendant." Id. (citing Wright, 739 F.3d at 1168).

The government presented additional evidence linking Walker to the ammunition in the residence. Officers found the title to Walker's Dodge Challenger alongside a box of ammunition in a kitchen drawer, in the same room as the ammunition on top of the cabinet. The jury also watched a video of Walker when he

made a telephone call while sitting in the back seat of a police car shortly after his arrest. During the call, Walker discussed, among other things, the ammunition the officers had just found in the apartment. Walker told the person on the other end of the call that he "told [officers], them bullets been up there." After the call ended, Walker spoke with the officers, and asked them whether they were going to "charge [him] for the bullets." A reasonable jury could conclude that these conversations reflected Walker's knowledge of and control over the ammunition found in the apartment where he was living. Viewing the entire record in the light most favorable to the verdict, there was sufficient evidence for a reasonable jury to have found beyond a reasonable doubt that Walker constructively possessed ammunition as charged in Count 6. See Aungie, 4 F.4th at 643.

## II.

Finally, Walker challenges his sentence. His advisory Guidelines range was 41–51 months of incarceration, but the district court varied upward to impose a total sentence of 80 months.

First, Walker argues procedural error, asserting that the court relied on a misunderstanding of the Guidelines' grouping rules and also failed to adequately explain its decision to vary upwards. See United States v. Black, 670 F.3d 877, 881 (8th Cir. 2012) (explaining that failing to adequately explain a chosen sentence constitutes procedural error). "In explaining the sentence the district court need only set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Id. at 882 (quoting United States v. Gonzalez, 573 F.3d 600, 607 (8th Cir. 2009)). Because Walker did not object at sentencing, we review for plain error. Id. at 881 (citation omitted) (discussing plain error review).

We find no plain error here. Walker argues the district court varied upward because it considered the firearm and drug charges to be "separate crimes," despite the fact that the grouping rules already took the separate nature of the offenses into

account in the calculation of his advisory sentence range. See generally United States Sentencing Guidelines (USSG) § 3D1.2 (2021). But the court described the offenses as "different crimes" in the context of determining whether to apply a four-level enhancement pursuant to USSG § 2K2.1(a)(6)—which it ultimately declined to apply—not when providing the reasons for the upward variance under 18 U.S.C. § 3553(a). See USSG § 3D1.2(c), (d); § 3D1.4. Instead, the court explained that the "upward variant sentence [was] justified because [Walker's] instant offense comprise[d] separate *instances* of drug trafficking, drug possession, and firearms over a significant period of time." (emphasis added). The court also relied on Walker's "serious criminal history," and on its view that his prior probationary and "short term" sentences had not deterred him from further criminal conduct. The district court provided sufficient explanation for the sentence imposed and did not rely on a misunderstanding of the Guidelines' grouping rules.

Second, Walker argues his sentence is substantively unreasonable, because neither the circumstances of his case nor the § 3553(a) factors support his above-guidelines sentence. We review a challenge to the substantive reasonableness of a sentence for abuse of discretion. United States v. McDaniels, 19 F.4th 1065, 1067 (8th Cir. 2021) (per curiam). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Green, 946 F.3d 433, 440 (8th Cir. 2019) (quoting United States v. Kreitinger, 576 F.3d 500, 503 (8th Cir. 2009)).

In arriving at Walker's sentence—which it found "sufficient but no greater than necessary to reflect the seriousness of the offenses, promote respect for the law, and address [Walker's] needs"—the district court considered the § 3553 factors, including the nature of the instant offense, Walker's criminal history, and that previous sentences had not served as adequate deterrence. It also considered the trial testimony, as well as "the presentence report in its entirety," statements of counsel and Walker, and the letters it received. There is no indication the district court failed

to consider a relevant factor or gave inappropriate weight to an irrelevant one, or that it committed a clear error of judgment in weighing the applicable factors.

## III.

The judgment of the district court is affirmed.

_____