# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1323

_____

United States of America,

*Plaintiff - Appellee*,

v.

Angelica Agena,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 19, 2024
Filed: May 28, 2025

_____

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

COLLOTON, Chief Judge.

Angelica Agena was convicted of possession with intent to distribute methamphetamine and conspiracy to distribute methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846. On appeal, Agena challenges an order of the district

court[*] denying her motion to suppress evidence seized during a traffic stop. She also challenges the admission of certain evidence at trial and the sufficiency of the evidence to convict. We conclude that there was no reversible error and affirm the judgment.

I.

This case began with a traffic stop near Waverly, Nebraska, in June 2022. At around 2:00 a.m., Deputy Jason Schnieder and Deputy Taylor Castaneda of the Lancaster County Sheriff's Office stopped a vehicle for a traffic violation because the driver's side taillight was not illuminated. *See* Neb. Rev. Stat. § 60-6,219(3), (6)(a). The officers also observed that the vehicle did not have license plates. After the vehicle came to a halt, the officers saw the driver lunge toward the passenger side of the vehicle. Deputy Schnieder explained that this action was consistent with the driver attempting to conceal an item or produce a weapon. The officers did not see anything in the driver's hand during this movement.

The officers approached the stopped vehicle and observed an open alcohol container behind the passenger seat. Deputy Schnieder described it as "an open pouch of alcoholic beverage" that said "alcoholic beverage right on it" with the "bottom[] flared out like there's liquid inside." The deputy told the driver, Gary Payton, that the bag of "frozen alcoholic beverage product" "looked about half full." Payton explained that he was "drinking it at like 2:00 this afternoon" but "didn't finish it." Nebraska law forbids any person in the passenger area of a motor vehicle to possess an open alcohol container while the vehicle is located on a state highway. *Id.* § 60-6,211.08(2).

---

[*]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska, adopting the report and recommendation of the Honorable Cheryl R. Zwart, United States Magistrate Judge for the District of Nebraska, now retired.

Neither Payton nor Agena, the only passenger, had a valid driver's license. Payton told the officers that he had recently purchased the vehicle, but the bill of sale he produced did not identify the seller, buyer, or date of purchase. The officers learned that Payton and Agena had met recently and did not know each other well. Deputy Schnieder testified that Agena was "very, very cautious and nervous" throughout the interaction and appeared to be concealing two bags with her legs. Although Payton said that alcohol from the open container had been consumed earlier that day, Agena claimed that it had been consumed a long time ago. The officers also saw in the back seat a butane torch lighter of a type that is sometimes used to light pipes for methamphetamine or crack cocaine.

The officers, suspecting criminal activity, handcuffed Payton and Agena and detained them in the police cruiser. The officers searched Payton's vehicle and found in Agena's purse a gallon-sized bag containing several smaller baggies of a crystalline substance. After roadside testing indicated that the substance was methamphetamine, the officers arrested Agena for possession of a controlled substance. Subsequent laboratory analysis determined that the gallon-sized bag contained 170 grams of methamphetamine.

A grand jury charged Agena with possession with intent to distribute five grams or more of methamphetamine (Count I) and conspiracy to distribute five grams or more of methamphetamine (Count II). *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846. Agena moved to suppress the evidence seized during the traffic stop based on alleged violations of her Fourth Amendment right to be free of unreasonable searches and seizures. The district court denied the motion, and the case proceeded to trial. A jury found Agena guilty on both counts, and the court sentenced her to fifty-four months' imprisonment and five years of supervised release.

Agena appeals. We review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Vittetoe*, 86 F.4th 1200, 1202 (8th Cir. 2023).

## II.

Agena first challenges the denial of her motion to suppress. She argues that the seized methamphetamine should be excluded from evidence as the fruit of violations of her rights under the Fourth Amendment. Agena conceded at oral argument that the defective taillight on Payton's vehicle established probable cause for the officers to initiate the traffic stop, *see Manning v. Cotton*, 862 F.3d 663, 669 (8th Cir. 2017), but she argues that later actions violated her rights.

## A.

Agena contends that the officers unlawfully prolonged the traffic stop and searched her purse without probable cause. Because Agena was a passenger in Payton's vehicle, she was seized for purposes of the Fourth Amendment and has standing to challenge the reasonableness of the traffic stop and the search of her personal property. *Brendlin v. California*, 551 U.S. 249, 251 (2007).

Agena insists that the officers should have simply issued Payton a ticket for the traffic infractions and released the vehicle and its occupants. Authority for a seizure on the basis of a traffic violation "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). But "[a]n officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016).

In this case, the open container violation was sufficient to establish reasonable suspicion of criminal activity. Nebraska law forbids possessing a receptacle that contains any amount of alcoholic beverage and "is open or has a broken seal." Neb. Rev. Stat. § 60-6,211.08(2). The officers observed evidence of a crime unrelated to the traffic violation, and it was reasonable for them to extend the stop in order to investigate.

The open container violation also gave the officers probable cause to search Agena's purse. Having observed one open container with alcohol inside, a reasonable officer could believe that there was a fair probability that more open containers were located in the passenger area of the vehicle. The officers thus had probable cause to search the passenger compartment for evidence of that offense. *United States v. Mena-Valdez*, No. 21-1120, 2021 WL 5985319, at \*1 (8th Cir. Dec. 17, 2021) (per curiam); *see also United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999).

The permissible scope of the search extended to "every part of the vehicle and its contents," including containers, that were capable of concealing evidence of the open container violation. *United States v. Ross*, 456 U.S. 798, 825 (1982). Agena's purse was capable of holding an open container of alcohol. Even assuming that the open container in the passenger compartment belonged to Payton, an offender "might be able to hide contraband in a passenger's belongings as readily as in other containers in the car." *Wyoming v. Houghton*, 526 U.S. 295, 305 (1999). The search of Agena's purse was therefore supported by probable cause.

B.

Agena also asserts that the methamphetamine should be suppressed because her detention during the search of the vehicle constituted an unlawful arrest. She insists that she should have been allowed to leave the scene because the traffic violations implicated only Payton as the driver. But the district court found that even if Agena

-5-

had been allowed to leave, the officers would not have permitted her to take her purse. That finding is supported by the record, and there was probable cause to seize the purse as a container that could have contained evidence of criminal activity. Even if Agena should have been released, therefore, the discovery of the drugs stemmed from independent probable cause to search the vehicle and its contents for evidence of an open container violation. The seizure of methamphetamine is not a fruit of Agena's detention, so suppression of that evidence is not warranted even assuming that she should not have been detained. *See United States v. Green*, 275 F.3d 694, 700 (8th Cir. 2001).

### III.

Agena next challenges the admission of certain evidence that the government presented at trial. Agena failed to object at trial to some of the evidence that she challenges on appeal, and ordinarily those contentions would be reviewed only for plain error. But all of Agena's challenges fail under the abuse-of-discretion standard that applies to preserved claims of error, so there is no need for separate analyses based on which claims were preserved. *See United States v. Kouangvan*, 844 F.3d 996, 999 (8th Cir. 2017).

### A.

Agena first contends that the district court abused its discretion by allowing Detective William Koepke, an officer in the Lincoln/Lancaster County Drug Task Force, to give expert testimony about the meaning of drug related terms used in text messages between Agena and others. We recount and address here only the messages which Agena cites in her brief on appeal. *See* Fed. R. App. P. 28(a)(8)(A); *United States v. Haire*, 806 F.3d 991, 996-97 (8th Cir. 2015).

In one challenged message from June 18, Agena told Payton, "I need some weight ... To gain ..lol." In another exchange beginning June 26, someone identifying herself as "Ana" told Agena that her "bro" had twenty dollars and was looking for "a cute shirt and tree to plant." Ana asked Agena, "[C]an u help with that or no?" Two days and several follow-up messages later, and just hours before the traffic stop, Agena responded, "I didn't have trees personally and I usually buy by the oz so I just didn't want to f**k with it and the cute shirt I'll get u when I get back to town." At trial, Detective Koepke testified that "weight" can be used in reference to drugs, that "tree" means "marijuana," and that "shirt" means "a 16th of an ounce of whatever controlled substance," including "methamphetamine, cocaine, and/or heroin."

Agena argues that there is "no scientific basis" for expert testimony about drug slang, and that because Detective Koepke "was not present when the texts were sent," his testimony constituted improper lay witness testimony. *See* Fed. R. Evid. 602; *id.* 701. We have repeatedly held, however, "that the district court 'may allow law enforcement officers to testify as experts about drug-related activities unfamiliar to most jurors,' including 'jargon used in the drug trade.'" *United States v. Overton*, 971 F.3d 756, 763 (8th Cir. 2020) (quoting *United States v. Lowe*, 9 F.3d 43, 47 (8th Cir. 1993)). This rule applies whether or not the officer was an active participant in the conversation about which he testifies. *See United States v. Avalos*, 817 F.3d 597, 601 (8th Cir. 2016).

Detective Koepke testified at length about the specialized knowledge, experience, training, and education upon which he based his expert testimony. *See* Fed. R. Evid. 702. He applied his knowledge about drug slang to help the jury understand the meaning of the messages introduced at trial. *See id*. 702(a). The district court therefore did not abuse its discretion by admitting Detective Koepke's testimony.

B.

Agena also contends that the disputed text messages and Detective Koepke's testimony constitute improper evidence of her bad character under Rule 404(b) or should have been excluded as unfairly prejudicial under Rule 403. Agena raised this challenge before trial, but the district court ruled that the text messages were admissible as "intrinsic" evidence of the charged offenses, and that Rule 404(b) did not apply. *See United States v. Guzman*, 926 F.3d 991, 999-1000 (8th Cir. 2019). The district court ruled alternatively that even if the messages were "extrinsic" evidence, they would still be admissible under Rule 404(b). The district court's primary rationale is sufficient to justify admission of the disputed evidence.

Rule 401 provides that evidence is relevant if it tends to make a fact more or less probable and the fact is of consequence in determining the action. Fed. R. Evid. 401. Even where evidence is relevant under Rule 401, however, Rule 404(b)(1) prohibits use of a defendant's prior act to prove her character in order to show that on a particular occasion she acted in accordance with the character. *Id.* 404(b)(1). But this prohibition does not extend to evidence that is "intrinsic" to a charged offense, including evidence that is "inextricably intertwined" with a charged offense or "completes the story" of a charged offense. *Guzman*, 926 F.3d at 999-1000 (internal quotation omitted).

The June 18 message in which Agena told Payton that she needed "some weight ... To gain" was followed shortly by another message in which Agena told Payton, "I can help y'all better than randy ever could just sayin." Payton then responded, "Ok I got to go back to omaha and get more." Payton testified that "randy," the person mentioned in Agena's message, was a drug customer who also introduced Payton to others. Payton understood Agena's offer to "help" him "better than randy" to mean that Agena would introduce Payton to some of her friends to sell methamphetamine. Payton also testified that his statement about going to Omaha

referred to "getting more meth," and that Agena knew that he obtained methamphetamine in Omaha.

Payton's testimony shows that the challenged message about gaining "weight" is relevant to establish Agena's commission of the conspiracy offense. *See United States v. Armstrong*, 60 F.4th 1151, 1165 (8th Cir. 2023). The disputed message between Agena and Payton is therefore admissible as intrinsic to the charged offense.

The messages between Agena and Ana were also relevant. Agena messaged Ana about "the cute shirt I'll get u when I get back to town" at 5:30 p.m. on June 28—the day before the traffic stop. Payton testified that Agena accompanied him on a trip to Omaha that day to purchase methamphetamine. Agena's promise to deliver a "cute shirt" to Ana is thus relevant to Agena's intent to distribute the seized methamphetamine. Because Agena discussed selling a "tree" to Ana in the same message in which she discussed the "cute shirt," the district court reasonably could have concluded "that such evidence was 'inextricably intertwined' with the methamphetamine conspiracy, or that at the very least it completed the story or provided context to that crime." *Guzman*, 926 F.3d at 1000. The disputed message between Agena and Ana is therefore admissible as intrinsic to the charged offense.

Agena also challenges these messages as unfairly prejudicial. Under Rule 403, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The disputed messages were prejudicial in the sense that they tended to prove the existence of the conspiracy and Agena's intent to distribute methamphetamine, but they were not unfairly prejudicial because they were directly relevant to the charged offenses. *United States v. Skarda*, 845 F.3d 370, 378 (8th Cir. 2016). The district court did not abuse its discretion in admitting the evidence.

Agena contends finally that the district court erred by denying her motion for judgment of acquittal because the government produced insufficient evidence to support her convictions. We review the denial of a motion for judgment of acquittal *de novo*, viewing the evidence and all reasonable inferences in the light most favorable to the jury's verdict. *United States v. Aungie*, 4 F.4th 638, 643 (8th Cir. 2021). The question is whether any reasonable jury could have found Agena guilty beyond a reasonable doubt. *Musacchio v. United States*, 577 U.S. 237, 243 (2016). Because the evidence against Agena was substantial as to both counts, the district court properly denied the motion.

Count I required the government to prove that Agena knowingly possessed more than five grams of methamphetamine and that she intended to distribute it. *United States v. Morales*, 813 F.3d 1058, 1065 (8th Cir. 2016). Agena challenges the sufficiency of the evidence on the possession element.

Agena claims that she did not "possess" the methamphetamine because Payton placed the bag of drugs in her purse. She cites Deputy Schnieder's testimony that he saw Payton lunge to the passenger area of the vehicle at the beginning of the traffic stop. But Payton testified that he gave Agena the bag of drugs to hide as the officers approached, and that she placed the bag in her purse herself. Deputy Castaneda testified that the officers found the methamphetamine in Agena's purse, which was stuffed between her legs. Based on this evidence, a reasonable jury could find that Agena exercised "knowing, direct, and physical control" over the methamphetamine, and that she therefore had actual possession of the drugs. *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004).

Count II required the government to prove: (1) the existence of a conspiracy, *i.e.*, an agreement, to distribute methamphetamine; (2) that Agena knew of the

conspiracy; and (3) that she intentionally joined the conspiracy. *Armstrong*, 60 F.4th at 1165. "An agreement to join a conspiracy need not be explicit, but may be inferred from the facts and circumstances of the case." *United States v. Rodriguez-Mendez*, 336 F.3d 692, 695 (8th Cir. 2003) (internal quotation omitted). The jury may rely on the testimony of a co-conspirator to determine whether the defendant knew of and intentionally joined the conspiracy. *Armstrong*, 60 F.4th at 1165.

Payton testified about the text exchange in which Agena offered to help him sell drugs. He also explained that he and Agena procured the seized methamphetamine with the intent to sell it to someone named "Billy," and that Agena alone was in contact with Billy. The government introduced text messages between Agena and one Billy Walton that corroborated Payton's story. On June 28—the day before the traffic stop—Walton asked Agena, "Can he do single for now," to which she responded, "Damn I just left with him to Omaha." Detective Koepke testified that "single" meant "single ounce." And in the hours leading up to the traffic stop, Agena and Walton discussed a plan to meet for drinks or at a hotel once she and Payton returned from Omaha.

Payton also recounted that Agena arranged a sale between him and Walton at her apartment for which she was present and received a portion of the proceeds. The government introduced text messages that corroborated Payton's narrative. In the early morning hours of June 27, Walton messaged Agena, "Can u help me out." She responded, "I'm waiting on him to get into town how much." Walton wrote back, "Ozzzzzzzzz," followed by "Or .2222255555555." Detective Koepke testified that Walton's texts were slang for "an ounce" "or two," respectively. Just after 6:00 a.m., Agena told Walton to come to her apartment. Walton quickly replied, "On my way." Agena's text messages with Payton support an inference that Payton was at her apartment at that time. In light of this evidence, a reasonable jury could have concluded that Agena knowingly and intentionally conspired with Payton to distribute methamphetamine.

\* \* \*

The judgment of the district court is affirmed.

_____