# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-3108
_____

United States of America

*Plaintiff - Appellee*

v.

Marwan Abdulkareem Hamdan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: October 23, 2025
Filed: March 4, 2026

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Marwan Abdulkareem Hamdan pleaded guilty to being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), based on evidence obtained during a traffic stop. Hamdan moved to suppress that evidence, arguing that the officers

impermissibly extended the stop in violation of the Fourth Amendment. The district court[1] denied his motion. We affirm.

## I. Background

At approximately 12:30 a.m. on September 4, 2022, Sioux Falls Police Department Officers Brian Mayberry and Nelson Leacraft observed a white Ford Taurus commit a traffic violation when it neglected to come to a complete stop before pulling onto the road from a gas station, which was known to the officers as a hotbed of gang- and drug-related activity. *See* S.D. Codified Laws § 32-29-2.2. The officers followed the Taurus, checked its license plate on their patrol car's computer, and learned that it was co-registered to Hamdan and his mother. Officer Leacraft recognized Hamdan's name, recalling that Hamdan was on parole for a prior firearms offense and was a person of interest in a shooting that had occurred six months earlier.[2] He relayed this information to Officer Mayberry. Officer Leacraft also recognized Hamdan as being associated with the "Gangster Disciples" street gang. He recalled that Hamdan had gang-related tattoos and seeing photos of Hamdan displaying gang signs and taking part in a Gangster Disciples music video.

The officers initiated a traffic stop and approached the vehicle. They found a woman in the driver's seat, Hamdan in the front passenger seat, and a man and a woman in the back. Officer Mayberry collected the driver's license and the vehicle's registration, then asked the driver to accompany him back to the patrol car where he used its onboard computer to perform a record check and update her contact information. While doing so, Officer Mayberry repeatedly questioned her about a variety of subjects, including her relationship with Hamdan, Hamdan's parole status,

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, partially adopting the report and recommendation of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

[2]Hamdan disputes that he was a person of interest in the shooting.

whether Hamdan or anyone in the group had been drinking or smoking marijuana, and whether there were any weapons in the vehicle.

Meanwhile, Officer Leacraft spoke with Hamdan and the other two passengers. Hamdan volunteered his driver's license. While speaking with Hamdan, Officer Leacraft noticed a gray Jeep nearby whose occupants were videoing the scene and asked Hamdan whether he knew the people in the Jeep. Hamdan eventually informed Officer Leacraft that his cousin was in the Jeep and that the two vehicles were planning to go downtown together.

Officer Leacraft then requested and obtained the backseat passengers' driver's licenses. The gray Jeep drove closer with one of its windows rolled down. Officer Leacraft called out, "How's it going?" but the Jeep's occupants did not respond and exited the parking lot. Officer Leacraft recognized one of the Jeep's occupants as Faisal Sheikh, whom he believed to have an active warrant and a history of violence. He then asked the passengers if they had any warrants or were on parole or probation. Hamdan and one of the backseat passengers—Habeeb Abdulkadir—both confirmed that they were on parole. Officer Leacraft recognized Abdulkadir as an associate of the Gangster Disciples street gang and recalled that Abdulkadir had a history of illegally carrying firearms and, like Hamdan, was on parole for a violent felony.

Hamdan asked why they had been pulled over, and Officer Leacraft explained the traffic violation that was the basis for the stop. He then used his radio to request back up and to ask dispatch to check the IDs of all three passengers. Officer Leacraft then asked Hamdan what he was on parole for, and Hamdan explained that he had three felony convictions for identity theft, a "gun charge," and robbery. Upon the arrival of backup, Officer Leacraft returned to the patrol vehicle to ask Officer Mayberry to use his computer to check the record of Sheikh, whom he had seen in the gray Jeep. This record check took less than two minutes and revealed that Sheikh did not have an active warrant but was on parole. Officer Leacraft then returned to the Taurus and requested that Abdulkadir and Hamdan step out of the vehicle so that he could perform a physical pat down search to check for weapons. When Hamdan

exited the Taurus, Officer Leacraft saw an open bottle of alcohol in plain view on the car's floorboard. Officer Leacraft removed the bottle from the vehicle and began to pour out its contents. As he did so—approximately ten minutes after the officers had initiated the traffic stop—Officer Leacraft heard from dispatch about the results of the passengers' record checks. Officer Leacraft then searched the vehicle for other open containers and discovered a Glock 22 .40 caliber handgun in the glove box. He then detained Hamdan for being a felon in possession of a firearm.

Hamdan was charged under 18 U.S.C. § 922(g)(1) with being a felon in possession. He moved to suppress all evidence obtained during the search of the Taurus, arguing that Officers Mayberry and Leacraft stopped the vehicle without reasonable suspicion, unlawfully prolonged the stop, and conducted the pat down searches without probable cause. A magistrate judge held an evidentiary hearing and issued a report and recommendation denying Hamdan's motion to suppress. The district court adopted an amended version of the magistrate judge's report and recommendation. The district court found that the officers had reasonable suspicion based on the traffic violation to initiate the traffic stop and, upon beginning the stop, developed reasonable suspicion that Hamdan was a felon in possession of a firearm. The district court thus denied Hamdan's motion to suppress the resulting evidence— i.e., the firearm. Hamdan appeals, arguing that the officers unlawfully extended the traffic stop and, therefore, that the resulting evidence should be suppressed.

## II. Discussion

On review of a motion to suppress, we review "factual findings for clear error and legal conclusions *de novo*." *United States v. Lewis*, 864 F.3d 937, 941 (8th Cir. 2017). We will affirm the denial of a motion to suppress "unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *Id.*

"Because it is subject to Fourth Amendment protections against unreasonable searches and seizures, a traffic stop must be supported by either reasonable suspicion

-4-

or probable cause." *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020). "To determine if probable cause or reasonable suspicion existed, we look at what the officers reasonably knew at the time . . . ." *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021) (citation modified). "A constitutionally permissible traffic stop becomes unlawful when its length exceeds the time needed to attend to the stop's 'mission' and 'related safety concerns.'" *Soderman*, 983 F.3d at 374 (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). Thus, a traffic stop "may last no longer than is necessary to effectuate" its purpose of addressing the infraction, and "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are— or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354 (citation modified). "An officer's mission includes ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (citation modified). A traffic stop's "routine tasks" also "may include asking a passenger for identification and running a computer check if the passenger consents to the request for identification." *United States v. Ward*, 140 F.4th 945, 951 (8th Cir. 2025) (citation modified).

On appeal, Hamdan does not challenge the lawfulness of either the initial stop or the pat down searches. Rather, he argues that the officers impermissibly extended the stop—and thus discovered the alcohol bottle, resulting in the firearm's discovery—in three respects. First, Hamdan contends that Officer Leacraft delayed the stop by radioing dispatch to perform the passengers' record checks rather than using the patrol car computer. Second, he argues that Officer Leacraft unnecessarily asked Officer Mayberry to perform a record check for Faisal Sheikh, the individual in the gray Jeep who had recently departed the scene. Third, Hamdan argues that Officer Mayberry impermissibly extended the stop by asking the driver questions unrelated to the traffic violation. These arguments are unavailing.

First, Officer Leacraft's radio request to dispatch did not extend the stop because he was not obliged to use the patrol car's computer to perform the passengers' record checks. True, "law enforcement must be reasonably diligent in

-5-

carrying out" the mission of a stop. *See United States v. Rederick*, 65 F.4th 961, 966 (8th Cir. 2023) (citation modified). In these circumstances, however, requesting a record check over radio did not reflect an unreasonable lack of diligence. Upon realizing that the vehicle contained four total occupants—two of whom were on parole and had a history of firearms violations—Officer Leacraft used his radio to request backup and record checks. He then waited until backup arrived to return to the patrol car. Officer Leacraft's decision to use the radio to request the record checks was well within the bounds of reasonable diligence. Thus, we cannot conclude that suppression of the firearm was warranted on that basis.

Second, Officer Leacraft's request that Officer Mayberry search for Sheikh in the database did not extend the stop because Officer Leacraft was still waiting on dispatch to provide the results of the passengers' records search. *See United States v. Thin Elk*, 148 F.4th 595, 599 (8th Cir. 2025) ("Because [the officer] had not completed the tasks related to the traffic stop (i.e., checking the licenses for any outstanding warrants) until after the dog sniff, . . . the traffic stop was not unreasonably prolonged or extended.") (citation modified); *Rodriguez*, 575 U.S. at 355 ("An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop" so long as he does "not do so in a way that prolongs the stop . . . ."). Moreover, even had the additional records request extended the stop, the extension would have been reasonable. The "tolerable duration" of a stop includes the time necessary to "attend to related safety concerns." *Rodriguez*, 575 U.S. at 354; *see also id.* at 356 ("Traffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." (citation modified)). The officers were in a high-crime area after midnight and were engaged in a traffic stop involving known gang affiliates. Checking the warrant status of a nearby individual who had been videoing the scene and driven away without acknowledging an officer's question was a "negligibly burdensome" safety precaution, not an "[o]n-scene investigation into other crimes." *See id.*

Finally, Officer Mayberry's questions to the driver did not extend the stop. Officer Leacraft radioed dispatch for assistance with the record checks at 12:32 a.m., a little over two minutes after Officer Mayberry and the driver returned to the patrol car. While Officer Mayberry was questioning the driver, Officer Leacraft was (1) performing routine tasks relevant to the mission of the traffic stop, *see Ward*, 140 F.4th at 951, (2) performing the physical pat down search—the lawfulness of which is not contested on appeal—and (3) searching the vehicle for more open containers. *See United States v. Agena*, 138 F.4th 1063, 1068 (8th Cir. 2025) ("Having observed one open container with alcohol inside, a reasonable officer could believe that there was a fair probability that more open containers were located in the passenger area of the vehicle."). As Officer Mayberry's questions did not extend the stop, we need not address whether they were reasonable. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

Therefore, the district court did not err in denying Hamdan's motion to suppress.

### III. Conclusion

For the foregoing reasons, we affirm.

_____